UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X
JANE DOE,

                                             26-cv-01734-JAV

              Plaintiff,

-against-                       **AMENDED COMPLAINT**

ICAHN SCHOOL OF MEDICINE
AT MOUNT SINAI,

              Defendant.
--------------------------------------------------X

Plaintiff, JANE DOE, by her attorneys STEWART LEE KARLIN LAW GROUP, P.C., respectfully submits to this Court and alleges as follows:

**PRELIMINARY STATEMENT**

1.     This is a civil action based upon Defendant's violations of the Americans with Disabilities Act, Title III, 42 U.S.C. § 12182, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, through discriminating against Plaintiff due to her disability and perceived disability. Plaintiff seeks damages for infringements upon her civil rights. Additionally, Plaintiff asserts claims under the New York State and City Human Rights Laws. ("NYCHRL" and "NYSHRL")

2.     Plaintiff commenced this instant proceeding pursuant to the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, concerning the obligation to repeat eighteen months of coursework, the failure to provide targeted remediation, the denial of access to classes during the pendency of her appeal, and additional violations of the Defendant's policies, as set forth below.

**PARTIES**

3.     Plaintiff was and remains a resident of the State of New York.

1

4.      Plaintiff has a disability and perceived disability (ADHD-Combined Presentation) and a history of temporal lobe epilepsy and migraines, whose functional limitations implicate executive functioning, working memory, sustained attention, and vulnerability to high cognitive load and unstructured task demands. Her neuropsychological evaluation reflects strong overall cognitive abilities with specific attention-related weaknesses, and it identifies that she performs best when tasks are brief, organized, and provided with clear instructions and structure.  These diagnoses impact major life activities within the meaning of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, and participated in protected activity pursuant to the discrimination laws.

5.      Plaintiff has an impairment that significantly restricts one or more life activities, maintained a history of such an impairment, and was perceived to have such an impairment.

6.      Plaintiff was subjected to discrimination due to her disability, perceived disability, and retaliation consequent to her complaints regarding discriminatory practices.

7.      The Defendant, the ICAHN SCHOOL OF MEDICINE AT MOUNT SINAI (hereinafter "ISMMS" or "Defendant"), is, upon information and belief, a not-for-profit corporation organized under the laws of the State of New York, with its principal place of business located in New York County. Upon information and belief, ISMMS receives federal funding. ISMMS is designated as a statutory Defendant as defined by the ADA and Section 504.

## JURISDICTION

1.      This action arises under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq, and New York State and City Human Rights Laws.

2

2.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. And Rehabilitation Act claims pursuant to 29 U.S.C. § 794a.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims, including claims under the New York State Human Rights Law, N.Y. Exec. Law § 296, NYC Admin. Code Sec. 8-107, pursuant to 28 U.S.C. § 1367(a), as those claims arise out of the same operative facts as Plaintiff's federal claims.

**VENUE**

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

6.      Defendant resides in, operates in, and conducts substantial business within this District.

7.      A substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

**FACTUAL STATEMENT**

8.      The Plaintiff is a medical student enrolled in the doctorate program at ISMSS and, throughout all relevant periods, was progressing through Phase 1 of the academic curriculum.

9.      Plaintiff has documented neurological disabilities and learning a disability, including ADHD (Combined Presentation) and a history of temporal lobe epilepsy and migraines, whose functional limitations implicate executive functioning, working memory, sustained attention, and vulnerability to high cognitive load and unstructured task demands. Her neuropsychological evaluation reflects strong overall cognitive abilities with specific attention-related weaknesses, and it identifies that she performs best when tasks are brief, organized, and provided with clear instructions and structure.

3

10.     Plaintiff's neuropsychological assessment and diagnoses indicate that her disability impacts her executive functioning and her susceptibility to high cognitive load conditions, particularly in areas such as sustaining attention, processing speed, distractibility, and working memory.

11.     According to the neuropsychologist's assessment, the analysis indicates that the Plaintiff benefits most from targeted instruction and explicit guidance, with her cognitive strengths becoming apparent when she is provided with a structured learning environment and appropriate strategies. The neuropsychologist further opined the following:

> "The clinical picture that emerges from this neuropsychological assessment is that of a bright, personable woman with generally strong cognitive abilities. [Plaintiff] demonstrated strengths in verbal intellectual reasoning abilities. She demonstrated weaknesses, however, with attention, including distractibility, sustaining attention over time, and working memory. Processing speed was intact when information was brief and when tasks had clear instructions. Organization, planning, and abstract thinking were within expectations on formal testing. Verbal/linguistic processing was within or above expectations. Visual-motor skills were within or mildly below expectations. Verbal memory was generally within expectations, particularly when information was organized (e.g. stories). Visual memory was within expectations. Based on these findings, [Plaintiff] will likely learn and perform best on tasks that are brief, organized/structured, and provide a strategy to keep track of information. She will likely have greater difficulty on tasks that are lengthy and require her to keep track of large amounts of details at once. She will likely process verbal information more effectively than visual information.
>
> Given the results of neuropsychological testing, combined with reported history, review of available records, and behavioral observations during testing, [Plaintiff] meets criteria for a diagnosis of Attention Deficit Hyperactivity Disorder-Combined Type (ADHD-C). It is important to note that ADHD impacts the ability to consistently REGULATE attention. As a result, people with ADHD are able to focus on interesting activities but have difficulties sustaining attention for less interesting task. In adolescence and young adulthood, difficulties with executive functioning become more prominent, including difficulties with organization, planning, and time management."

12.     Plaintiff fulfilled all Phase 1 requirements of the program, except for one course (Cardiology), despite experiencing significant health flare-ups.

13.     Prior to Phase 1, Plaintiff successfully obtained two degrees from highly selective institutions in addition to receiving commendations from faculty members, mentors, and supervising surgeons during her enrollment at ISMSS.

14.     Plaintiff's academic difficulties arose during remediation processes in Hematology and Cardiology and were not the result of a lack of aptitude or effort.

15.     Plaintiff experienced health issues due to her disabilities during the Hematology and Cardiology remediation periods that interfered with her ability to independently structure learning without support.

16.     Plaintiff requested targeted, guided remediation as a disability accommodation based on her ADHD and learning profile.

17.     Defendant denied Plaintiff's request for targeted remediation on the grounds that such support would constitute a "fundamental alteration" of the remediation process.

18.     During a Renal remediation, Defendant provided Plaintiff with targeted and guided remediation, including: specific feedback identifying areas of deficit; opportunities to meet with the course professor before and after quizzes; and a shorter, targeted assessment addressing Plaintiff's specific knowledge gaps.

19.     Plaintiff completed the Renal remediation within approximately one month and earned a score of 77 on the remediation assessment, meeting the established criterion for a passing result.

20.     The Renal remediation demonstrated that targeted remediation was feasible, effective, and previously implemented by Defendant. Despite this precedent, Defendant declined to provide comparable targeted remediation for Hematology and Cardiology.

21.     Plaintiff's request was to make global remediations, in Cardiology and Hematology, as accessible as the targeted remediation (in Renal) which adequately accommodated her ADHD disability.

22.     Plaintiff initially made her accommodation requests specifically for her remediation plan for the Hematology course and then subsequently requested that these same accommodations be applied to Cardiology.

23.     Following the Program's issuance of the remediation, Plaintiff repeatedly communicated her concerns and sought adjustments to the plan, specifically based on her disability.

20.24. Plaintiff met with the Office of Curricular Affairs (OCA) on December 1, 2025, and explicitly requested that the discussions regarding Hematology should apply to Cardiology. Plaintiff's requests for changes to remediation were dismissed by the committee. This meeting was recorded on a speech-to-text app with their consent, and the transcript was provided to them afterward. There is a consensual audio recording of this meeting that verifies these statements.

21.25.  In Hematology remediation, Plaintiff initially received no specific feedback identifying areas for improvement, no assignments, and no targeted list of topics. In a later Hematology remediation attempt, Plaintiff received some feedback; however, additional requirements were imposed before Plaintiff was permitted to meet with the professor.

22.26.  During Hematology and Cardiology remediation, Plaintiff was required to function simultaneously as instructor and student by independently identifying deficits, teaching the material to herself, and formulating questions without structured guidance. In fact, Plaintiff had to hire outside tutors at her own personal expense to obtain instructional support that was not provided by Defendant.

Formatted: Indent: Left: 0", First line: 0", Space Before: 0 pt, After: 0 pt, Add space between paragraphs of the same style, Outline numbered + Level: 1 + Numbering Style: 1, 2, 3, ... + Start at: 5 + Alignment: Left + Aligned at: 0.25" + Tab after: 0.5" + Indent at: 0.5", Widow/Orphan control, Adjust space between Latin and Asian text, Adjust space between Asian text and numbers, Tab stops: Not at 0.5"

Formatted: Font color: Text 1

Formatted: Font: 12 pt

Formatted: Font: 12 pt

Formatted: Font: 12 pt

Formatted: Font: 12 pt

23.27. Defendant characterized Plaintiff's deficits as "global" based on final examination performance and denied Plaintiff a targeted assessment.

24.28. When Plaintiff independently created a structured remediation framework in Hematology, Plaintiff passed the remediation with a score of 72. Plaintiff took the same Hematology remediation assessment three times, scoring 44, then 64, and finally 72 after structured support was introduced.

25.29. In Cardiology remediation, Plaintiff was provided only a comprehensive list of course topics and was required to retake the final examination. Plaintiff did not receive feedback on the initial Cardiology exam prior to remediation. Plaintiff did not receive specific feedback identifying areas of deficit prior to the Cardiology remediation assessment.

26.30. Although the Cardiology remediation date had been scheduled previously, the course professor contacted Plaintiff only days before the examination to offer a meeting, after Plaintiff had already self-taught herself the material. Completion of two quizzes was required before the Plaintiff was permitted to meet with the Cardiology professor, and the quizzes were not targeted to specific deficits.

27.31. The Cardiology remediation process was conducted under significant time constraints due to overlapping Hematology remediation requirements.

28.32. Plaintiff scored 58 on the Cardiology remediation, falling a few points short of passing.

29.33. On December 22, 2025, the Promotions Committee imposed Academic Probation and remediation requirements. This probationary action was imposed before all remediation outcomes were known (including pending remediation results), and while Plaintiff's ADA/Section 504 concerns and requested remediation structure were actively being raised and litigated internally. The timing and context show a punitive escalation rather than a corrective accommodation posture.

30.34.  The School's Cardiology remediation plan required: (i) two formative "targeted knowledge quizzes," and (ii) a single graded NBME CAS proctored 60-item examination, with a required passing threshold of 65% and a Pass/Fail outcome based solely on that exam. Plaintiff completed the proctored remediation examination on January 15, 2026, and received a score of 58%, below the 65% threshold.  However, Plaintiff's written submissions document that the Cardiology remediation structure provided inadequate scaffolding for a student whose disability impacts executive regulation. In Cardiology, Plaintiff was given an overbroad list of topics and minimal guided instruction, with limited faculty meetings, no targeted feedback keyed to demonstrated deficiencies, and an expectation that Plaintiff independently teach herself complex concepts without a reliable mechanism to identify gaps.

31.35.  Plaintiff raised concerns on December 15th during a Promotions Committee meeting and via email on December 23, 2025, regarding the need for targeted remediation to administrators, the Office of Curricular Affairs, and the Promotions Committee.

32.36.  In this correspondence, Plaintiff requested a targeted remediation plan and a collaborative remediation structure, as well as raising issue with the ASCEND Phase 1 Policy-Procedure inconsistencies regarding targeted remediation requirements, fair and timely remediation, the absence of a targeted remediation exam, a lack of course-wide analysis, and LCME due process expectations; as well as concerns of psychological safety due to her treatment by Dr. Soriano, the Senior Associate Dean of Curricular Affairs in Medical Education.

33.37.  Plaintiff's requests for accommodation were denied repeatedly.

38.    When one of Plaintiff's learning proposals was forwarded by the Office of Curricular Affairs to Disability Services, it was denied without a formal proposal process.

Thereafter, on January 6, 2026, Plaintiff submitted a formal request to redefine her global remediation plans, including for Hematology, distinguishing between requests that would be considered standard practice and those that were accommodations under the ADA and federal law.

34.

35.39.  Plaintiff later submitted aThis formal accommodation request citeding federal disability law, precedent, and pedagogical practice.

36.40.  Defendant denied the request without substantively addressing Plaintiff's policy and legal concerns.

37.41.  Defendant informed Plaintiff on January 17, 2026, that accommodations would not be provided, citing a determination of a global knowledge deficit.

38.42.  Between December 2025 and January 2026, Plaintiff pursued disability accommodations while simultaneously completing Hematology and Cardiology remediations without any adjustment to the remediation timeline.

39.43.  The process of pursuing accommodations consumed a substantial amount of Plaintiff's time during the remediation period.

40.44.  Plaintiff's success in Renal remediation and Hematology remediation under structured conditions demonstrates that Plaintiff can remediate efficiently when appropriate support is provided.

45.    Plaintiff completed Hematology remediation in approximately one week once structured support was in place.

46.    In contrast, Cardiology remediation provided only an overbroad topic list, limited faculty interaction, and no targeted feedback keyed to demonstrated deficiencies.  Specifically, Plaintiff's requests were handled in the following manner:

9

(Request 1)" Targeted Assessment…targeted areas of deficiency" which was provided in Renal, Quizzes were not targeted as noted by Cardiology professor unlike written on Cardiology Remediation Plan

(Request 2) "Targeted Outlined Feedback…outlining subtopics and providing a structured outline with lecture references" which was provided in Renal, Cardiology professor specifically mentioned they cannot provide lecture references.

(Request 3) "Individualized Collaborative Tutoring (Instructor Tutoring implemented in global Cardiology and Renal remediations…focused on gap identification and collaborative problem solving" including structured instructor support without prerequisites to this time. In Renal, IPlaintiff was able to meet whenever the instructor was free), Cardiology meetings were limited to two 30-minute sessions for covering of global deficit only offered days before the exam was scheduled was not seeking a fundamental alteration of the courses in mythe accommodation requests.  The same accommodations provided in Renal could not have fundamentally altered Cardiology.

In regards to Plaintiff's request regarding the Cardiology exam, the Cardiology exam was on January 15th; The appeal to the Dean was submitted on December 23rd and a conversation with Dean Nestler about disability was on January 13 due to limitations in the Dean's schedule. The Disability Services (DS) Formal Request was submitted on January 6th. Both replies came after the date. The Dean's response to the appeal was on January 17th and DS response was on January 21st. No explanation of why this couldn't be implemented (including global deficit vs targeted deficit) was given from these decisions until after the test was completed. There was also no explanation of the fundamental alteration that would be caused by accommodations requested in the denial of myPlaintiff's

December requests for support to DS and faculty after friction with OCA and request for advocacy for learning needs.

47.

48. Plaintiff requested a non-punitive, corrective path forward that would allow progression to Phase 2 (clinical rotations) with Plaintiff's class.

49. Plaintiff requested the opportunity for Cardiology re-remediation with appropriate accommodations and an adjustment to deadlines to account for delays caused by Defendant's refusal to engage in a timely interactive process.

50. Plaintiff did not request a leave of absence or deceleration as an accommodation.

51. On February 12, 2026, the Promotions Committee made the decision to force Plaintiff's repetition of Phase 1 and placing Plaintiff on Administrative Leave of Absence.

52. Plaintiff duly appealed both the December 22, 2025 and the February 12, 2026 decisions of the Promotions Committee.

53. By letter dated February 26, 2026, Defendant issued a final determination upholding the decisions of the Promotions Committee.

54. Plaintiff has exhausted all available internal remedies.

55. Plaintiff maintains that punitive outcomes such as deceleration, suspension, dismissal, or forced leave of absence would penalize her for Defendant's failure to provide reasonable accommodations.

**CAUSES OF ACTION**

**AS AND FOR A FIRST CLAIM FOR RELIEF**

**VIOLATION OF SECTION 504 OF THE
REHABILITATION ACT OF 1973, 29 U.S.C. § 794**

50.56.  Plaintiff reasserts, reiterates, and re-alleges each and every paragraph set forth above with the same force and effect as if more fully set forth herein.

51.57.  Plaintiff is an individual with disabilities within the meaning of Section 504 of the Rehabilitation Act.

52.58.  Defendant is an educational institution that receives federal financial assistance and is therefore subject to Section 504.

53.59.  Plaintiff was otherwise qualified to participate in and complete Defendant's academic program.

54.60.  Defendant denied Plaintiff meaningful access to remediation and academic progression by failing to provide reasonable accommodations necessary to account for Plaintiff's disabilities.

55.61.  Plaintiff requested targeted, guided remediation as an accommodation, which was reasonable and effective, as demonstrated by Defendant's prior provision of the same or substantially similar remediation during Plaintiff's Renal remediation.

56.62.  Defendant denied Plaintiff's accommodation requests despite actual knowledge of Plaintiff's disabilities, documentation supporting the requests, and clear institutional precedent demonstrating feasibility.

57.63.  Defendant failed to engage in a timely, good-faith interactive process regarding Plaintiff's accommodation requests.

58.64.  Defendant's refusal to provide accommodations resulted in Plaintiff being subjected to adverse academic consequences that were not attributable to lack of aptitude or qualification.

59.65.  Defendant's conduct constituted discrimination solely by reason of disability.

60.66.  Defendant acted with deliberate indifference to Plaintiff's federally protected rights.

67. As a direct and proximate result of Defendant's violations, Defendant has violated Section 504, 29 U.S.C. § 794, and the regulations promulgated thereunder, resulting in Plaintiff suffering educational harm, loss of equal access, emotional distress, and risk of punitive academic outcomes.

**AS AND FOR A SECOND CLAIM FOR RELIEF**

**DISABILITY DISCRIMINATION – FAILURE TO
PROVIDE REASONABLE MODIFICATIONS
ADA, Title III, 42 U.S.C. § 12182**

68. Plaintiff reasserts, reiterates, and re-alleges each and every paragraph set forth above with the same force and effect as if more fully set forth herein.

69. Plaintiff is an individual with disabilities within the meaning of the ADA.

70. Defendant owns, operates, or controls a place of public accommodation within the meaning of Title III of the ADA.

71. Defendant denied Plaintiff full and equal enjoyment of its educational services by failing to make reasonable modifications to its remediation policies, practices, and procedures.

72. Plaintiff requested targeted remediation as a reasonable modification to accommodate disability-related barriers during remediation.

73. Defendant denied the requested modification on the asserted basis that it constituted a "fundamental alteration," despite having previously implemented the same remediation structure for Plaintiff.

74. Defendant failed to conduct an individualized assessment or engage in an interactive process before denying Plaintiff's request.

75. Defendant's refusal to provide reasonable modifications denied Plaintiff equal access to remediation and academic advancement.

76. Defendant's actions violated Title III of the ADA.

13

77. As a result of the willful activities of Defendant, Plaintiff has been deprived of equal educational opportunities based upon her disability, and perceived disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12182.

78. As a result, Plaintiff has been damaged that exceeds the minimum jurisdiction of this Court.

**AS AND FOR A THIRD CLAIM FOR RELIEF**

**FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS**
**ADA and Section 504 of the Rehabilitation Act**

79. Plaintiff reasserts, reiterates, and re-alleges each and every paragraph set forth above with the same force and effect as if more fully set forth herein.

80. Federal disability law requires covered entities to engage in a good-faith interactive process when a qualified individual with a disability requests accommodations.

81. Plaintiff repeatedly requested accommodations and proposed specific, documented remediation structures.

82. Defendant denied Plaintiff's requests without meaningful dialogue, formal evaluation, or reasoned analysis.

83. Defendant rejected proposals without addressing the legal, policy, or pedagogical bases raised by Plaintiff.

84. Defendant's failure to engage in the interactive process resulted in the denial of reasonable accommodations.

85. Defendant's conduct constitutes discrimination under the ADA and Section 504.

**AS AND FOR A FOURTH CLAIM FOR RELIEF**

**DISPARATE TREATMENT ON THE BASIS OF DISABILITY**
**ADA and Section 504**

14

80.86.  Plaintiff reasserts, reiterates, and re-alleges each and every paragraph set forth above with the same force and effect as if more fully set forth herein.

81.87.  Defendant treated Plaintiff differently from similarly situated students by denying accommodations that were previously provided to Plaintiff in another course.

82.88.  Defendant relied on a "global deficit" characterization to deny accommodations without accounting for disability-related barriers.

83.89.  Defendant's remediation policies and practices disproportionately burden students with disabilities who require structured instructional support.

84.90.  Defendant's conduct resulted in discriminatory treatment and a discriminatory impact on the basis of disability.

### AS AND FOR A FIFTH CLAIM FOR RELIEF

### VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### N.Y. Exec. Law § 296

85.91.  Plaintiff reasserts, reiterates, and re-alleges each and every paragraph set forth above with the same force and effect as if more fully set forth herein.

86.92.  Defendant is an educational institution subject to the New York State Human Rights Law.

87.93.  Plaintiff is a person with a disability within the meaning of the NYSHRL.

88.94.  Defendant failed to provide reasonable accommodations and denied Plaintiff equal educational opportunity on the basis of disability.

89.95.  Defendant's actions constitute unlawful discrimination under New York law.

90.96.  As a result of the foregoing, Defendant violated Executive Law § 296 by subjecting Plaintiff to discrimination based on her disability and perceived disability.

91.97.  As a result of Defendant's actions Plaintiff was humiliated and endured mental anguish.

### AS AND FOR A SIXTH CLAIM FOR RELIEF.

15

**VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**
**N.Y. Exec. Law § 296**

92.98.  Plaintiff reasserts, reiterates, and re-alleges each and every paragraph set forth above with the same force and effect as if more fully set forth herein.

93.99.  Defendant is an educational institution subject to the New York City Human Rights Law.

94.100. Plaintiff is a person with a disability within the meaning of the NYCHRL.

95.101. Defendant failed to provide reasonable accommodations, failed to engage in cooperative dialogue and denied Plaintiff equal educational opportunity on the basis of disability.

96.102. Defendant's actions constitute unlawful discrimination under New York law.

97.103.         As a result of the foregoing, Defendant violated Administrative 8-107 by subjecting Plaintiff to discrimination based on her disability and perceived disability.

98.104.         As a result of the Defendant violating the City Human Rights Law, Plaintiff has been damaged.

99.105. As a result of Defendant's actions Plaintiff was humiliated anD endured mental anguish.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment against the Defendant as follows:

   a. Declare that Defendant violated Section 504 of the Rehabilitation Act and the ADA,

   b. Grant injunctive relief requiring Defendant to provide immediate, non-punitive, corrective academic pathway, including accommodated remediation;

   c. students with disabilities;

   d. Award compensatory damages as permitted by law;

16

e. Reinstatement to the institution, with full privileges granted to the Plaintiff to continue her studies;

f. Expungement of the academic probation imposed on the Plaintiff and noted on their transcript/record before remediation outcomes were known by the Defendant

g. Reimbursement for the tuition paid by the Plaintiff to the Defendant, along with related expenses;

h. Special damages encompassing the loss of a career due to not obtaining a degree, including the salary the Plaintiff would have earned had she been awarded a degree;

i. Emotional and psychological damages incurred by the Plaintiff as a result of the conduct of the Defendants;

j. Damages incurred by the Plaintiff as a result of the disruption in their educational continuity attributable to the improper dismissal/forced leave from the program;

k. Damages to Plaintiff's professional reputation, as well as pain, suffering in an amount to be determined at trial;

l. Award reasonable attorneys' fees, costs, and disbursements pursuant to 29 U.S.C. § 794a and 42 U.S.C. § 12205;

m. Grant such other and further relief as the Court deems just and proper.

m.

Dated: New York, New York
~~March 2~~May 29, 2026

~~Yours, etc.,~~

STEWART LEE KARLIN
LAW GROUP, P.C.



~~/s/    Stewart    Lee~~
~~Karlin~~
Stewart Lee Karlin, Esq.
Daniel E. Dugan, Esq.
*Attorneys for Plaintiff*
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670
slk@stewartkarlin.com

**Formatted:** Font: 12 pt, Font color: Text 1, Ligatures: None

**Formatted:** Normal,  No bullets or numbering

18