UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------------------------------------------------x

JANE DOE,

                                                          Plaintiff,

            -against-                                                   No.: 1:26-cv-01734-JAV

ICAHN SCHOOL OF MEDICINE AT
MOUNT SINAI

                                                          Defendant.

---------------------------------------------------------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

JACKSON LEWIS P.C.

Susan D. Friedfel, Esq.
Sophia J. Dibbini, Esq.
44 South Broadway, 14th Floor
White Plains, New York 10601
(914) 872-8060
Susan.Friedfel@jacksonlewis.com
Sophia.Dibbini@jacksonlewis.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS ................................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 2

I.      ISMMS's Academic and Disability Policies. ................................................................... 3

        A.      ISMMS Medical Student Handbook. ................................................................... 3

        B.      Student Disability Services Policies. ................................................................... 4

II.     Phase 1 Academic Performance. ...................................................................................... 5

III.    Hematology and Cardiology Remediations. ..................................................................... 6

        A.      December 15, 2025 Promotions Committee Review and
                Placement on Academic Probation. ..................................................................... 8

IV.     Ongoing Remediation Efforts, Accommodation Discussions, and
        January 2026 Academic Review. ...................................................................................... 10

STANDARDS APPLICABLE TO THIS MOTION ..................................................................... 12

ARGUMENT ............................................................................................................................... 13

PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY
        WITH PREJUDICE. ........................................................................................................ 13

I.      PLAINTIFF FAILS TO STATE A CLAIM UNDER A FAILURE-
        TO-ACCOMMODATE THEORY. .................................................................................. 13

        A.      Plaintiff Was Not Qualified to Progress to Phase 2 of the
                M.D. Program. .................................................................................................... 14

        B.      Plaintiff Never Requested the Accommodation She Claims
                Was Denied for Cardiology. ................................................................................ 15

        C.      ISMMS Repeatedly Engaged in the Interactive Process and
                Granted Plaintiff Accommodations. .................................................................... 16

        D.      Plaintiff's Successful Completion of Hematology
                Remediation without the Requested Modifications
                Undermines Any Claim that the Remediation Format Was a
                Barrier to Access. ............................................................................................... 18

E.   Plaintiff's Requested Accommodations Would
Fundamentally Alter the M.D. Program and, Therefore,
Impose an Undue Hardship.................................................................................. 19

    1.   "A 30-item focused assessment targeting specific
areas of deficiency rather than a global re-test"...................................... 19

    2.   "Detailed Feedback within the 'three buckets,'
specifically identifying sub-topics and providing a
structured outline with lecture references" ............................................. 20

    3.   "Individualized tutoring focused on gap
identification and collaborative problem solving
before non-graded assessments"............................................................... 20

II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER A
DISPARATE TREATMENT THEORY. ......................................................... 22

A.   Plaintiff Was Not Denied Access to the M.D. Program
Because of Disability. .......................................................................... 22

B.   Plaintiff Fails to Identify Any Similarly Situated Students
Treated More Favorably. ..................................................................... 23

C.   Plaintiff's Rehabilitation Act Claim Must Be Dismissed
Because She Cannot Allege That Any Action Was Taken
Solely by Reason of Disability. .......................................................... 25

CONCLUSION............................................................................................................ 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) .................................................................................................. 12

Askins v. Weinberg,
  No. 19-CV-8793, 2022 U.S. Dist. LEXIS 177992 (S.D.N.Y. Sep. 29, 2022) .......................... 26

Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.,
  683 F. Supp. 3d 224 (E.D.N.Y. 2023) ...................................................................... 17

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) .................................................................................................. 12

Blevins v. Town of Brighton,
  No. 24-CV-6080-MAV, 2025 U.S. Dist. LEXIS 131300 (W.D.N.Y. July 10, 2025) .............. 24

Blundell v. Nihon Kohden Am.,
  No. 5:15-CV-1503, 2018 U.S. Dist. LEXIS 163948 (N.D.N.Y. Sep. 25, 2018) ...................... 15

Brodt v. City of N.Y.,
  4 F. Supp. 3d 562 (S.D.N.Y. 2014) ........................................................................ 24

Caldarera v. Int'l Longshoremen's Ass'n, Local 1,
  No. 17-CV-1414, 2018 U.S. Dist. LEXIS 111135 (S.D.N.Y. July 3, 2018) ........................... 13

Cangro v. N.Y.C. Dept. of Fin.,
  No. 23-CV-10097, 2024 U.S. Dist. LEXIS 195549 (S.D.N.Y. Oct. 25, 2024) ...................... 25

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002) ................................................................................... 13

Daniels v. Kijakazi,
  No. 22-cv-6297, 2023 U.S. Dist. LEXIS 99683 (S.D.N.Y. June 8, 2023) .............................. 24

Dass v. City Univ. of N.Y.,
  No. 18-CV-11325, 2020 U.S. Dist. LEXIS 70420 (S.D.N.Y. Apr. 21, 2020) ........................ 25

Doe v. Franklin Square Union Free Sch. Dist.,
  100 F.4th 86 (2d Cir. 2024) ..................................................................................... 14

Doe v. Pfrommer,
  148 F.3d 73 (2d Cir. 1998) ...................................................................................... 22

Dooley v. Jetblue Airways Corp.,
  No. 14-CV-4432, 2017 U.S. Dist. LEXIS 138892 (S.D.N.Y. Aug. 28, 2017) ........................ 25

Falchenberg v. N.Y. State Dep't of Educ.,
  642 F. Supp.2d 156 (S.D.N.Y. 2008) ..................................................................... 21

Freckleton v. Mercy Coll. N.Y.,
  No. 22-CV-1985, 2023 U.S. Dist. LEXIS 52148 (S.D.N.Y. Mar. 27, 2023) ........................ 22

Fulton v. Goord,
   591 F.3d 37 (2d Cir. 2009) ............................................................................................ 13

Goe v. Zucker,
   43 F.4th 19 (2d Cir. 2022) ..................................................................................... 25, 26

Goonewardena v. N. Shore Long Island Jewish Health Sys.,
   No. 11-CV-2456, 2014 U.S. Dist. LEXIS 41659 (E.D.N.Y. Mar. 26, 2014) ........................... 17

J.D. ex rel. J.D. v. Pawlet Sch. Dist.,
   224 F.3d 60 (2d Cir. 2000) ............................................................................................ 24

Jain v. Carnegie Mellon Univ.,
   No. 18-1163, 2020 U.S. Dist. LEXIS 29346 (W.D. Pa. Feb. 20, 2020) ................................... 14

Joester Loria Grp. v. Licensing Co.,
   No. 10 Civ. 6742, 2011 U.S. Dist. LEXIS 46597 (S.D.N.Y. Apr. 9, 2011) ............................. 12

Kirkland-Hudson v. Mount Vernon City Sch. Dist.,
   665 F. Supp. 3d 412 (S.D.N.Y. 2023) ................................................................................ 24

Kosack v. Entergy Enters. Inc.,
   No. 14-CV-9605, 2019 U.S. Dist. LEXIS 12483 (S.D.N.Y. Jan. 25, 2019) ............................. 22

Kramer v. Time Warner, Inc.,
   937 F.2d 767 (2d Cir. 1991) ............................................................................................ 2

Maczaczyj v. N.Y.,
   956 F. Supp. 403 (W.D.N.Y. 1997) .................................................................................... 21

McElwee v. Cty. of Orange,
   700 F.3d 635 (2d Cir. 2012) ..................................................................................... 14, 17

Millington v. Temple Univ. Sch. of Dentistry,
   261 F. App'x 363 (3d Cir. Jan. 23, 2008) ............................................................................ 14

Morren v. N.Y. Univ.,
   20-CV-10802, 2022 U.S. Dist. LEXIS 94266 (S.D.N.Y. Apr. 29, 2022) ............................... 24

Odermatt v. Mount Sinai Hosp.,
   No. 1:24-cv-05250, 2026 U.S. Dist. LEXIS 52741 (S.D.N.Y. Mar. 13, 2026) ......................... 14

Pierce v. Fordham Univ., Inc.,
   No. 15-CV-4589, 2016 U.S. Dist. LEXIS 71322 (S.D.N.Y. June 1, 2016) ............................. 12

Powell v. Nat'l Bd. of Med. Exam'rs,
   364 F.3d 79 (2d Cir. 2004) .................................................................................. 14, 21, 23

Reid v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.,
   No. 2:23-cv-6303, 2025 U.S. Dist. LEXIS 171659 (E.D.N.Y. Sep. 3, 2025) ........................... 16

Shaywitz v. Am. Bd. of Psychiatry & Neurology,
   848 F. Supp. 2d 460 (S.D.N.Y. 2012) ................................................................................ 16

Torres v. MMS Grp., LLC,
   2024 U.S. Dist. LEXIS 116828 (S.D.N.Y. July 2, 2024) ........................................................ 14

Verne v. N.Y.C. Dept. of Educ.,
    697 F. Supp. 3d 30 (S.D.N.Y. 2023) ...................................................................... 18

Weisshaus v. Port Auth. of N.Y. & N.J.,
    814 F. App'x 643 (2d Cir. 2020) ............................................................................ 2

Wright v. City of N.Y.,
    2024 U.S. Dist. LEXIS 154796 (S.D.N.Y. Aug. 27, 2024) ...................................... 23

Wright v. TD Bank N.A.,
    No. 25-336-CV, 2026 U.S. App. LEXIS 4157 (2d Cir. Feb. 11, 2026) ................................... 13

**Statutes**

29 U.S.C. § 794(a) ............................................................................................... 25

42 U.S.C. § 12131 ................................................................................................ 14

Americans with Disabilities Act, Title III, 42 U.S.C.S. § 12182 ................................... 13

Rehabilitation Act, § 504, 29 U.S.C.S. § 794 .............................................................. 13

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 2, 12

Defendant, Icahn School of Medicine at Mount Sinai ("ISMMS" or the "School"), by and through its attorneys, Jackson Lewis P.C., submits this Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint filed by Jane Doe ("Plaintiff").

## PRELIMINARY STATEMENT

This action is not about disability discrimination. It is about a medical student who, despite extensive academic support and approved accommodations, failed to satisfy the academic requirements of a rigorous M.D. program and now seeks to reframe those outcomes as unlawful discrimination under Title III of the ADA, § 504 of the Rehabilitation Act, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

Over the course of her enrollment, ISMMS repeatedly supported Plaintiff's efforts to succeed. Plaintiff was granted extensive accommodations for her disabilities, including: housing accommodation of a medical single; stop-the-clock breaks; limited assignment extensions; limited assessment rescheduling in Phase 1; note-taking for Phase 1; time-and-a-half on written portions of exams/quizzes; and a distraction-reduced test environment. With all these accommodations, Plaintiff still failed 5 modules in the first phase of her medical education.

Despite these failures, ISMMS continued to support Plaintiff's pursuit of her medical degree. She received every retake opportunity permitted by policy, multiple remediation opportunities, remediation plans and study guides, repeated faculty meetings, access to a learning specialist, and flexible scheduling of remediation examinations. When, after failing remediation exams, Plaintiff requested modifications to the structure of the remediation assessment process, Student Disability Services ("DS") engaged in the interactive process, meeting with Plaintiff and conducting an individualized assessment of her requests for accommodation. After careful consideration, ISMMS denied Plaintiff's requests for changes to the structure, scope, or standards of remediation assessments based on their judgment that the requested modifications would

fundamentally alter the medical education program. The law does not require the School to make such fundamental alterations, and the School's judgement as to the depth and breadth of knowledge a future physician must demonstrate and how that knowledge should be assessed is entitled to deference from the Court. Plaintiff's preference for a different structure of remediation to align with her learning style and her subjective belief that the changes would not require a fundamental alteration of the academic program are insufficient to state a claim of disability discrimination.

Plaintiff's claims fail as a matter of law. She was not qualified to advance in the program after failing to complete Phase 1 requirements, she was not denied access to educational opportunities because of disability, and she cannot plausibly allege intentional discrimination or disparate treatment. For these reasons, and as set forth more fully below, Defendant respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice.

## STATEMENT OF FACTS

Plaintiff enrolled at ISMMS in Fall 2024 to pursue a Doctor of Medicine ("M.D.") degree, a rigorous, competency-based, four-year professional program. (Amended Compl. ¶ 8[1].) Prior to her enrollment, Plaintiff was diagnosed with Attention-Deficit/Hyperactivity Disorder, Combined Presentation ("ADHD-C"), and has a history of temporal lobe epilepsy and migraines. (Amended Compl. ¶ 9.)

---

[1] In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must limit consideration to the factual allegations in the complaint which are accepted as true, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. Weisshaus v. Port Auth. of N.Y. & N.J., 814 F. App'x 643, 646 (2d Cir. 2020);  see Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

A copy of the Amended Complaint filed by Plaintiff that is the subject of this motion is attached to the Declaration of Susan D. Friedfel in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint as Exhibit S.

I.      ISMMS's Academic and Disability Policies.

    A.      ISMMS Medical Student Handbook.

ISMMS's Doctor of Medicine program is governed by written academic policies set forth in the ISMMS Medical Student Handbook.  (Declaration of Susan D. Friedfel in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint, hereinafter "Friedfel Decl.", Ex. A.; see Amended Compl. ¶¶ 2, 36, 71, 89.)  These policies establish uniform standards for academic performance, retakes, remediation, progression, and appeal, and apply to all medical students.  (Friedfel Decl., Ex. A.)

The ISMMS curriculum is organized into three sequential phases under the "ASCEND" framework.  (Id. at 33.)  Phase 1 consists of pre-clinical foundational coursework, Phase 2 consists of required clinical clerkships, and Phase 3 focuses on advanced clinical preparation and transition to residency.  (Id.)  Only upon successful completion of all three phases may a student be eligible for the M.D. degree.  (Id.)

Under the ASCEND Retake Policy, once a student has exhausted the permitted retakes or receives a final grade of Fail in a Phase 1 module, the student is required to complete a structured remediation plan to demonstrate achievement of the expected competencies.  (Id. at 39.)  The Academic Progress and Remediation Policy provides that, upon a course failure, the Module Director will identify or develop a remediation assessment targeted to areas in which the student did not meet expectations, and states, "The remediation assessment may be the same as that failed by the student or may be designed to address specific content or competencies."  (Id. at 14.)  Remediation must be completed within the timelines defined by the academic calendar and governing policies.  (Id. at 54.)  All Phase 1 modules must be passed or remediated by the end of the Phase 1 academic period in order for a student to progress to Phase 2.  (Id. at 8.)

The Progression Policy further provides that students who fail one or more modules in Year 1 of Phase 1 will be reviewed by the Promotions Committee in accordance with the Remediation Policy.  (Id. at 13-14.)  The Promotions Committee is responsible for approval, modification, or rejection of proposed academic plans; implementation of remediation plans; and disciplinary actions, including warning, probation, suspension of enrollment, or dismissal.  (Id. at 3.)  Academic Probation is a monitoring status reflecting unresolved academic deficiencies and is not a disciplinary sanction.  (Id. at 20.)  Once placed on Academic Probation, a student is required to demonstrate degree progress within a specified timeframe.  (Id.)  If academic performance remains unsatisfactory or required timelines are not met, additional actions, including suspension or dismissal, may be considered.  (Id.)

### B.    Student Disability Services Policies.

To access accommodations, students must register with DS by providing appropriate disability documentation and submitting a formal request for accommodations through the DS Request for Accommodations Form.  (Friedfel Decl., Ex. B. at 1-2.)  Accommodations are not retroactive, and students are advised to complete the registration and request process as early as possible.  (Id. at 1.)

Accommodation determinations are made through an individualized, interactive process and may involve consultation with faculty or other experts as appropriate.  (Id.)  The individualized assessment considers multiple factors, including: (i) the nature of the student's disability and its functional impact; (ii) the student's history of prior accommodations; (iii) the necessity of the requested accommodation and potential alternative accommodations; (iv) whether the requested accommodation would alter the essential requirements of a course or academic program; and (v) whether the accommodation would impose an undue burden on the institution.  (Id.)

Once a student submits a request, the DS Director reviews the information provided during the intake process, supporting documentation, and the requirements of the academic program to determine eligibility for services and, where appropriate, recommend specific accommodations. (Id. at 2.)  Students found eligible for accommodation(s) must meet with DS personnel to receive an accommodation letter and review the School's policies and procedures governing the provision of accommodations.  (Id. at 3.)  Students are then responsible for providing the letter to their course instructors and discussing the implementation of approved accommodations.  (Id.)  Students are required to notify DS promptly if they encounter any difficulty receiving approved accommodations or believe they have been treated differently.  (Id. at 3.)

## II.    Phase 1 Academic Performance.

During the Spring 2025 semester, Plaintiff was enrolled in several Phase 1 modules including Hematology and Cardiology.  (Amended Compl. ¶ 14.)  Plaintiff failed both modules and was required under School policy to complete remediation for each module prior to the prescribed academic deadline in order to advance to Phase 2.  (Amended Compl. ¶¶ 28, 32; see Friedfel Decl., Ex. A at 8.)

During the Fall 2025 semester, Plaintiff was enrolled in the Renal Phase 1 course and received a failing score below the 65% passing threshold.  (Amended Compl. ¶¶ 18-19.)  Plaintiff was subsequently provided a written remediation plan specifying the applicable content areas, assessment components, and grading criteria.  (Amended Compl. ¶¶ 18-19; see Friedfel Decl., Ex. C.)  Based on faculty analysis identifying discrete and localized deficiencies in Renal, Plaintiff was assigned targeted remediation limited to four specific content areas.  (Friedfel Decl., Ex. C.)  Plaintiff met with faculty and support resources as outlined in the remediation plan and successfully completed Renal remediation, earning a passing score of 77%.  (Amended Compl. ¶ 19.)

### III.    Hematology and Cardiology Remediations.

Plaintiff took the Hematology remediation exam in October 2025 and failed with a score of 64%.  (Amended Compl. ¶ 28.)  On or about December 1, 2025, the Office of Curricular Affairs ("OCA") met with Plaintiff to discuss her concerns regarding the Hematology remediation process.  (Amended Compl. ¶ 24.)  During that meeting, Plaintiff asserted that the School's remediation process was inconsistent with LCME standards and had been applied unfairly to her, including by requiring global remediation assessments.  (Friedfel Decl., Ex. R.)  OCA faculty explained the basis for the School's remediation approach, including that Plaintiff's performance reflected deficiencies across multiple content areas, warranting a comprehensive remediation rather than a targeted one.  (Id.)  Plaintiff did not request accommodations based upon her disability, but rather focused on the School's compliance with LCME standards and her position that the remediation process in Hematology should be targeted like the process in Renal.  (Id.)  Plaintiff recorded this meeting with the consent of the attendees.  (See id.)

On or about December 2, 2025, as ISMMS faculty reviewed Plaintiff's exam performance and prepared remediation plans for Hematology and Cardiology, Assistant Dean for Student Affairs and Learning Specialist Dr. Lauren Linkowski ("Dr. Linkowski"), on Plaintiff's behalf, inquired of ISMMS faculty regarding the scope of Plaintiff's Cardiology remediation, with Plaintiff included on the email correspondence.  (Friedfel Decl., Ex. D; see Amended Compl. ¶¶ 16, 27, 34, 88.)  Faculty informed Plaintiff and Dr. Linkowski that, based on Plaintiff's Cardiology final examination score of 38% and failure of all four quizzes, the remediation assessment "will be global and cover all topics/content from the original module."  (Friedfel Decl., Ex. D.)

Plaintiff then asked faculty to identify the competencies or topic areas she had not met in Cardiology, to explain why a "global remediation approach was selected," and to clarify how the Cardiology remediation plan differed from the targeted Renal remediation she had received, citing

the ISMMS Phase 1 Remediation Policy.  (Id.; see Amended Compl. ¶¶ 18-19, 29, 34.)  Faculty responded by, again, explaining the basis for structuring Cardiology remediation as comprehensive rather than focusing on specific topics, stating:

> In cardiology, you scored a 38% on the exam, and failed all 4 quizzes. **Thus, there were no topics in which you have obtained competency.** We are working on the specific topics to learn, but **all major areas** (CHF, valve, physiology, murmurs, embryology, ischemia, EP, etc.) **had substantial deficits**. As previously discussed, in renal, there were areas in which you demonstrated competency, as evidenced by your passing the examination.

(Friedfel Decl., Ex. D.)

On December 8, 2025, Plaintiff was provided with written Hematology and Cardiology remediation plans that included study guides, identification of major content domains and learning objectives, and clarification of assessment expectations.  (Amended Compl. ¶¶ 25, 29, 34; see Friedfel Decl., Ex. E.)

In response, Plaintiff requested a modified "ADA-appropriate learning structure" with respect to her Hematology remediation plan.  (Friedfel Decl., Ex. F; see Amended Compl. ¶ 16.) In her request, Plaintiff claimed that her ADHD affected how she processed material under time constraints and sought a more structured approach that aligns with her disability accommodations. (Friedfel Decl., Ex. F; see Amended Compl. ¶ 11.)  She requested a "more targeted" remediation rather than reassessment of the entire Hematology module; more feedback regarding missed concepts on prior remediation attempts rather than the "overly broad" list of topics she was provided; and "alternative mastery checks through tutoring rather than multiple quizzes."  (Friedfel Decl., Ex. F.)

That same day, Plaintiff separately emailed DS Director Christine Low, LCSW-R ("Ms. Low"), stating:

As you know, I have documented ADHD and epilepsy … **While my formal exam accommodations have been implemented**, the **structure and communication around remediation** have not aligned with how my disability profile requires information to be processed . . . I am seeking an ADA-aligned remediation structure that minimizes disability-related overload, reflects how I learn best, and allows me to accurately demonstrate competency.

(Friedfel Decl., Ex. G; see Amended Compl. ¶ 16.) (emphasis added.)

### A.    December 15, 2025 Promotions Committee Review and Placement on Academic Probation.

On December 15, 2025, Plaintiff emailed Promotions Committee Chair Dr. Martha Arden ("Dr. Arden") stating:

Disability Services notified me that they had received communication indicating that I had submitted *accommodation requests* to the Office for Curricular Affairs. **I would like to clarify that I did not submit any new accommodation requests to OCA,** nor did I authorize OCA to engage Disability Services on my behalf . . . . My recent correspondence concerned whether the proposed remediation plan could be revised in a way that better aligns with my learning needs, given my documented disability. **This was a curricular inquiry, not a request for additional disability accommodations.**

(Friedfel Decl., Ex. H; see Amended Compl. ¶¶ 35-36.) (emphasis added.)  Dr. Arden and Ms. Low followed up separately with Plaintiff for clarification as to what she was seeking, and Ms. Low explained that the "changes requested to the remediation plan [reflected in Plaintiff's December 8, 2025 email] are not reasonable, as they would constitute a fundamental alteration to the curriculum and assessments."  (Friedfel Decl., Ex. G; see Amended Compl. ¶ 17.)  Plaintiff responded on December 23, 2025, explaining,

"[f]rom the Renal remediation process and review of my neuropsychological evaluation, I've learned that I am most successful when there is an approach that includes targeted feedback and opportunities to meet with faculty to review concepts."

8

(Friedfel Decl., Ex. G.)  She further asserted her belief that such "supports" would not change the process itself.  (Id.; see Amended Compl. ¶¶ 35-36.)

Subsequently on December 15, the Promotions Committee met with Plaintiff following her failure of the Hematology remediation examination, as she had now failed an additional remediation and had multiple outstanding remediation requirements across three Phase 1 modules, triggering academic review.  (Friedfel Decl., Ex. H; see Amended Compl. ¶¶ 33, 35.)  Plaintiff reiterated her objections to the Hematology remediation plan before the Promotions Committee, while stating that she was not requesting new accommodations but did have "[ADA] concerns." (Friedfel Decl., Ex. H; see Amended Compl. ¶ 35.)  She also characterized continued remediation testing as "punitive" and asked the Promotions Committee to award a Pass based on her overall improvement rather than pursuant to established remediation policies and performance thresholds. (Friedfel Decl., Ex. H.)

The Promotions Committee explained that it did not design remediation plans or alter module grades.  (Friedfel Decl., Ex. H; see Amended Compl. ¶¶ 33, 35.)  When asked whether she had been able to access her approved accommodations and whether they had been effective, Plaintiff stated that she had access to them and that they "have helped processing material on page but not to show progress."  (Friedfel Decl., Ex. H.)  Plaintiff was placed on Academic Probation and required to complete all Phase 1 remediation by the academic calendar deadline of February 9, 2026, directed to continue meeting with her tutor and Dr. Linkowski, and was scheduled for a follow-up review for January 12, 2026.  (Amended Compl. ¶ 33; see Friedfel Decl., Exs. H, I.) Plaintiff appealed the Academic Probation determination to the Dean of ISMMS, Dr. Eric Nestler. (Amended Compl. ¶ 52; Friedfel Decl., Ex. J.)  Overlooking the extensive nature of her failure in Hematology, Plaintiff requested a targeted remediation structure and asserted that it had been

9

effective for her in Renal.  (Friedfel Decl., Ex. J.)  On January 17, 2026, Dean Nestler upheld the Promotion Committee's decision, reiterating that the global approach to remediation in Hematology was driven by the global nature of her deficiencies as compared to Renal in which her deficiencies were restricted to particular areas.  (Amended Compl. ¶ 41; Friedfel Decl., Ex. K.)

### IV.    Ongoing Remediation Efforts, Accommodation Discussions, and January 2026 Academic Review.

On January 5, 2026, Ms. Low asked Plaintiff to clarify whether she was requesting in her December 22, 2025 email specific disability accommodations related to Hematology remediation. (Friedfel Decl., Ex. G.)  Plaintiff responded, "I don't really have a request, which is why I am asking for the meeting. I think a potential accommodation may become clearer in our conversation."  (Id.)  Plaintiff and Ms. Low met on January 6, 2026, after which Plaintiff made three requests for the following modifications to the Hematology remediation:

a.  "A 30-item focused assessment targeting specific areas of deficiency rather than a global re-test";

b.  "Detailed feedback within the 'three buckets,' specifically identifying sub-topics and providing a structured outline with lecture references"; and

c.  "Individualized tutoring focused on gap identification and collaborative problem solving before non-graded assessments."

(Amended Compl. ¶ 46; Friedfel Decl., Ex. G.)

On January 20, 2026, Dr. Fallar sent Plaintiff a revised Hematology remediation plan. (Friedfel Decl., Ex. L; see Amended Compl. ¶ 25.)

On January 21, 2026, Plaintiff was notified that she received a score of 58% on her January 15, 2026 Cardiology remediation examination.  (Amended Compl. ¶ 32, 34; Friedfel Decl., Ex. M.)

On January 21, 2026, DS denied Plaintiff's January 6, 2026 Hematology accommodation requests following an individualized review, concluding that the proposed modifications were not necessary to address a disability-related access barrier and would constitute a fundamental alteration of the academic program.  (Amended Compl. ¶ 17, 40; Friedfel Decl., Ex. N.)  Plaintiff thereafter sat for the Hematology remediation examination on January 29, 2026 and passed with a score of 72%.  (Amended Compl. ¶ 28.)

On February 12, 2026, following the Promotions Committee's February 9, 2026 meeting, the Promotions Committee determined that Plaintiff had not met the requirements to progress to Phase 2 and required that she repeat Phase 1, placing her on an Administrative Leave of Absence pending re-enrollment in the fall.  (Amended Compl. ¶ 51; Friedfel Decl., Ex. O.)  In its decision, the Promotions Committee concluded that Plaintiff's remediation plans were appropriately structured and, based on a review of Plaintiff's documentation and academic history, determined that accelerating an additional Cardiology remediation on a shortened timeline could be academically harmful.  (Friedfel Decl., Ex. O.)

Plaintiff appealed this decision and in her written statement in support of her appeal, she requested that the decision be overturned on "ADA considerations," and, on that basis, asserted that her requested accommodations were denied without a meaningful interactive process, that remediation assessments were invalid absent her requested modifications, and that her success in targeted Renal remediation warranted similar approaches in Hematology and Cardiology. (Amended Compl. ¶ 52; Friedfel Decl., Ex. P.)

Dean Nestler upheld the Promotions Committee's decision and found that ISMMS had properly engaged in the interactive process, that DS conducted an individualized review and appropriately determined that Plaintiff's requested Hematology remediation modifications would

11

constitute a fundamental alteration, and that ISMMS policies were followed.  (Amended Compl. ¶ 53; Friedfel Decl. Ex. Q.)  He further noted that Plaintiff had not requested disability-related accommodations for Cardiology remediation prior to sitting for the examination and that accommodation requests could not be made retroactively.  (Friedfel Decl. Ex. Q.)

## STANDARDS APPLICABLE TO THIS MOTION

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed when the plaintiff fails to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  Although the Court must accept as true all well-pled factual allegations when deciding a 12(b)(6) motion, that tenet is "inapplicable to legal conclusions," (Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) and a plaintiff must do more than plead mere conclusory allegations or legal conclusions in order to avoid dismissal.  To survive a motion to dismiss, the plaintiff must plead factual allegations "enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 570 (dismissing the complaint where the plaintiffs had not "nudged their claims across the line from conceivable to plausible").

Where, as here, a plaintiff's amended complaint contains only conclusory allegations but no specific facts in support of the claims, the Court may properly grant a 12(b)(6) motion as a matter of law. See Joester Loria Grp. v. Licensing Co., No. 10 Civ. 6742, 2011 U.S. Dist. LEXIS 46597, at *5-8 (S.D.N.Y. Apr. 9, 2011) (granting motion to dismiss under Twombly and Iqbal where plaintiff pled only conclusory allegations); Pierce v. Fordham Univ., Inc., No. 15-CV-4589, 2016 U.S. Dist. LEXIS 71322, at *25-26 (S.D.N.Y. June 1, 2016) (granting motion to dismiss amended complaint and denying leave to amend due to futility, noting that plaintiff's amended

12

complaint "added only a handful of new, and irrelevant, allegations" that could not cure pleading defects);  Caldarera v. Int'l Longshoremen's Ass'n, Local 1, No. 17-CV-1414, 2018 U.S. Dist. LEXIS 111135, at *11-12 (S.D.N.Y. July 3, 2018).

When evaluating the claims for purposes of a 12(b)(6) motion, the court can consider documents that are incorporated by reference in the complaint.  See Wright v. TD Bank N.A., No. 25-336-CV, 2026 U.S. App. LEXIS 4157, at *2 n.1 (2d Cir. Feb. 11, 2026) (holding document incorporated into complaint where document was integral to claims);  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion.")

**ARGUMENT**

**PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY WITH PREJUDICE.**

Plaintiff's claims under Title III of the ADA, § 504 of the Rehabilitation Act, the New York State Human Rights Law, and the New York City Human Rights Law should be dismissed because the Amended Complaint still fails to plausibly allege that ISMMS denied Plaintiff access to its M.D. program or discriminated against her by reason of disability. A plaintiff alleging disability discrimination may proceed under one of three theories: (1) disparate treatment, (2) disparate impact, or (3) failure to make a reasonable accommodation.  Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).   While Plaintiff alleges both disparate treatment and failure-to-accommodate, each theory fails.

**I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER A FAILURE-TO-ACCOMMODATE THEORY.**

To prevail on a failure-to-accommodate claim under Title III of the ADA, § 504, NYSHRL or NYCHRL, Plaintiff must establish that (1) she was a qualified individual with a disability;  (2)

Defendant is subject to the statutes it is alleged to have violated; and (3) she was denied the opportunity to participate in or benefit from the Defendant's services, programs, or activities, or was otherwise discriminated against by Defendant because of her disability. See Torres v. MMS Grp., LLC, 2024 U.S. Dist. LEXIS 116828, at *6-7 (S.D.N.Y. July 2, 2024); see also Doe v. Franklin Square Union Free Sch. Dist., 100 F.4th 86, 99 (2d Cir. 2024) (analyzing together claims under ADA and § 504); Odermatt v. Mount Sinai Hosp., No. 1:24-cv-05250, 2026 U.S. Dist. LEXIS 52741, at *19 (S.D.N.Y. Mar. 13, 2026) (same standards apply under ADA, NYSHRL, and NYCHRL). Plaintiff's allegations fail to satisfy any of these requirements.

### A.    Plaintiff Was Not Qualified to Progress to Phase 2 of the M.D. Program.

Plaintiff fails to plead that she was a "qualified individual with a disability" at the time of the challenged academic decisions. A qualified individual is one who "with or without reasonable modifications," meets the essential eligibility requirements for participation in the program. 42 U.S.C. § 12131; see McElwee v. Cty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012).

Plaintiffs who fail to satisfy mandatory academic progression requirements in the context of higher education are not "qualified" under the ADA or § 504. See Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 87 (2d Cir. 2004) (medical student unqualified where she failed to demonstrate required mastery); see also Millington v. Temple Univ. Sch. of Dentistry, 261 F. App'x 363, 366 (3d Cir. Jan. 23, 2008) (dentistry school); Jain v. Carnegie Mellon Univ., No. 18-1163, 2020 U.S. Dist. LEXIS 29346, at *23 (W.D. Pa. Feb. 20, 2020) (master's program). Here, Plaintiff did not meet the essential academic requirements for progression into Phase 2 of ISMMS's M.D. program. By the February 9, 2026 academic deadline, Plaintiff had failed to successfully remediate Cardiology and therefore did not satisfy all Phase 1 requirements necessary to advance to Phase 2 and begin to engage in patient care. (See Friedfel Decl., Ex. A.)

14

B.    **Plaintiff Never Requested the Accommodation She Claims Was Denied for Cardiology.**

Plaintiff's failure-to-accommodate claim independently fails because she never requested the accommodation she now alleges was denied for Cardiology remediation. Her requests were focused entirely on Hematology.

Plaintiff's Amended Complaint does not cure this defect. Plaintiff now alleges that she "initially made her accommodation requests specifically for her remediation plan for the Hematology course and then subsequently requested that these same accommodations be applied to Cardiology." (Amended Compl. ¶ 22.) But the very audio recording of the December 1, 2025 OCA meeting, upon which Plaintiff relies, contradicts that allegation. (See Friedfel Decl., Ex. R.)

At no point in that recording did Plaintiff make a request for accommodations relating to Cardiology. To the contrary, she expressly confirmed that her request concerned Hematology remediation. (Id. at 00:42:40-55.) She further clarified that the purpose of the meeting was not to address Cardiology, explaining: "my intent was not to discuss Cardio my intent was to basically come to a conclusion of how remediation should look like [in Hematology] and then just apply that to Cardio since nothing has been done for Cardio anyway" (Id. at 01:34:35-52) and reiterating, "like I said wasn't discussing Cardio at this point" (Id. at 01:35:30-40.)

Furthermore, throughout the modification request period, Plaintiff repeatedly represented to ISMMS that her requests regarding Hematology remediation were not disability accommodations, stating, "I would like to clarify that I did not submit any new accommodation requests," (Friedfel Decl., Ex. H) "This was a curricular inquiry, not a request for additional disability accommodations[]," (id.) and submitted no new medical documentation in support of those requests. See Blundell v. Nihon Kohden Am., No. 5:15-CV-1503, 2018 U.S. Dist. LEXIS 163948, at *29-31 (N.D.N.Y. Sep. 25, 2018) (holding that Plaintiff never requested the

15

accommodations "he now argues were not provided," noting that he "affirmatively stated that he never requested an accommodation"); see also Reid v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc., No. 2:23-cv-6303, 2025 U.S. Dist. LEXIS 171659, at *33-34 (E.D.N.Y. Sep. 3, 2025) ("Amended Complaint does not plausibly allege that [plaintiff] made any specific request [] for an accommodation for her disability.")  Instead, she characterized her proposed changes as curricular modifications aligned with her "learning approach."  (Friedfel Decl., Ex. G.) When she ultimately couched her request as disability related in her January 6, 2026 email, she made the requests for the Hematology remediation and did not even mention Cardiology.  (Id.)

The facts here closely mirror Shaywitz v. Am. Bd. of Psychiatry & Neurology, 848 F. Supp. 2d 460, 468-69 (S.D.N.Y. 2012).  In Shaywitz, the plaintiff received accommodations for one portion of a certification examination but failed to request, or even identify, any accommodations for another portion.  The court held that receipt of prior accommodations did not excuse the plaintiff's failure to request accommodations for the later assessment and emphasized that Title III's accommodation requirement "would be rendered meaningless" if an entity were required to guess what accommodations an individual sought or whether they were reasonable in light of the relevant assessment.  Id. at 461, 468-69.  The Court reasoned that the ADA "does not require that the defendant create a 'post hoc exception' to its explicit policies."  Id. at 468-69.

## C.    ISMMS Repeatedly Engaged in the Interactive Process and Granted Plaintiff Accommodations.

ISMMS fully satisfied its legal obligations by consistently engaging in the interactive process with Plaintiff.

Over the course of Plaintiff's enrollment, ISMMS approved multiple accommodations through DS, including: housing accommodation of a medical single;  stop-the-clock breaks;  limited assignment extensions;  limited assessment rescheduling in Phase 1;  note-taking for Phase

16

1;  time-and-a-half on written portions of exams/quizzes;  and a distraction-reduced test environment.  (Friedfel Decl., Ex. G.)  In connection with these accommodations, DS conducted individualized assessments, communicated with Plaintiff to clarify her needs, and issued written accommodation determinations.

DS followed the same interactive process with respect to Plaintiff's request to modify the structure of Hematology remediation. As reflected in the correspondence, DS engaged in follow-up communications with Plaintiff to better understand the scope and nature of her request and met with her to discuss it. DS thereafter issued a written determination responding to the request.  The fact that DS ultimately declined to approve the requested remediation modifications does not negate that the interactive process occurred.

The law does not require institutions to provide a student with "every accommodation [s]he requests or the accommodation of [her] choice," let alone one that was never requested. McElwee, 700 F.3d at 641.  See also Goonewardena v. N. Shore Long Island Jewish Health Sys., No. 11-CV-2456, 2014 U.S. Dist. LEXIS 41659, at *35-36 (E.D.N.Y. Mar. 26, 2014) (plaintiff failed to state claim under ADA and § 504 because defendants did attempt to accommodate plaintiff); Dean, 804 F.3d at 187 (failure to state claims under ADA and § 504).  Moreover, accommodations are "never a guarantee of success: they are instead designed only to give disabled students a reasonable *opportunity* to pass an exam or meet other program requirements notwithstanding their disabilities." Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech., 683 F. Supp. 3d 224, 235 (E.D.N.Y. 2023) (as applied to § 504 and NYSHRL).

Plaintiff herself acknowledged that "my formal exam accommodations have been implemented" (Friedfel Decl., Ex. G.) and "have helped processing material on page but not to

17

show progress." (Friedfel Decl., Ex. H.)  These admissions reflect academic difficulty—not a denial of access or failure to engage in the interactive process.

### D. Plaintiff's Successful Completion of Hematology Remediation without the Requested Modifications Undermines Any Claim that the Remediation Format Was a Barrier to Access.

Plaintiff's own allegations concerning Hematology remediation further demonstrate that the modifications she sought were not required to provide disability-related access.  As Plaintiff acknowledges, DS denied her requested modifications to the structure of Hematology remediation, determining after individualized review that the proposed changes were not necessary to address a disability-related access barrier and would constitute a fundamental alteration of the remediation assessment.  (See Amended Compl. ¶ 17.)

Plaintiff now attempts to recast the timing of that denial as improper or untimely in light of her January 15, 2026 Cardiology exam.  But, as established, Plaintiff did not request accommodations for Cardiology on January 6, 2026, and in any event, she received the denial well in advance of her January 29, 2026 Hematology remediation exam.  See Verne v. N.Y.C. Dept. of Educ., 697 F. Supp. 3d 30, 52 n.7 (S.D.N.Y. 2023) ("courts in this Circuit have found in the reasonable accommodation context that even a delay of months in responding to an accommodation request cannot by itself give rise to an inference of discriminatory intent").  Critically, notwithstanding that denial—and without receiving the requested modifications—Plaintiff subsequently passed Hematology remediation with a score of 72%.  (Amended Compl. ¶ 28.)

Plaintiff now alleges that her "success in Renal remediation and Hematology remediation under structured conditions demonstrates that [she] can remediate efficiently when appropriate support is provided," and that she completed Hematology remediation "in approximately one week once structured support was in place." (Amended Compl. ¶¶ 44–45.)

18

These allegations defeat any inference that the denied Hematology remediation modifications were necessary to ensure disability-related access.  Plaintiff does not allege that she ultimately passed Hematology remediation because DS altered the assessment, modified grading criteria, or changed academic standards.  To the contrary, she passed under the same remediation for which her requested modifications were denied.

Accordingly, Plaintiff was not denied access to ISMMS's M.D. program because of disability.

### E.    Plaintiff's Requested Accommodations Would Fundamentally Alter the M.D. Program and, Therefore, Impose an Undue Hardship.

Even assuming, arguendo, that Plaintiff had requested a disability-related accommodation for Cardiology and was otherwise qualified, her failure-to-accommodate claim independently fails because the accommodations she sought would fundamentally alter ISMMS's academic program and impose an undue hardship as a matter of law.

#### 1.    "A 30-item focused assessment targeting specific areas of deficiency rather than a global re-test"

In this request, Plaintiff sought changes that went beyond ensuring access and instead would have required ISMMS to alter what academic competencies were assessed and how mastery was evaluated, including the requirement that remediation demonstrate mastery of all required course content in a single, comprehensive assessment.  Plaintiff's characterization of her request as a modest adjustment or "targeted remediation" (Amended Compl. ¶ 32) does not withstand scrutiny. As ISMMS repeatedly explained to Plaintiff, the targeted remediation structure she received in Renal remediation could not be replicated for Hematology or Cardiology because faculty analysis revealed fundamentally different academic profiles.  (Friedfel Decl., Ex. D; contra Amended Compl. ¶ 29.)  Plaintiff's performance in Renal was reliably strong in several topics and weak in others, and her deficiencies were limited to four clearly identifiable content areas,

permitting focused remediation.  (See Friedfel Decl., Ex. C.)  By contrast, faculty determined—based on Plaintiff's module examination, quizzes, and performance data—that her deficiencies in Hematology and Cardiology were diffuse and spanned multiple content domains.  In Cardiology, Plaintiff had not passed a single quiz or exam in the entire module.  (See Friedfel Decl., Ex. D.) Where a student has not demonstrated competency in any discrete areas, it is not academically sound—or feasible—to confine remediation to a narrow subset of topics or to thirty questions; that would have been too few questions to test her competency across all the areas a passing student must master.  (See id.)  These distinctions were grounded in academic assessment and curricular standards.

### 2.    "Detailed Feedback within the 'three buckets,' specifically identifying sub-topics and providing a structured outline with lecture references"

In this request, Plaintiff sought to have the module director develop a specialized set of materials catered to Plaintiff's learning style and to reteach her the course as part of her remediation.  In the ISMMS remediation process, the responsibility to re-learn the module material using the remediation plan as a guide rests with the student.  The module director is available as a resource to support the student and answer questions, not to be a one-on-one tutor.  (See Friedfel Decl., Ex. A at 53-55, Exs. C, E, L.)

### 3.    "Individualized tutoring focused on gap identification and collaborative problem solving before non-graded assessments"

In the typical remediation process, a student takes certain assessments at the start of remediation to identify where to focus and then works with the module director on the specific questions or areas they found challenging; these are referred to in the remediation plan as "formative assessments."  Rather than take those assessments and then work with the module director on her problem areas, Plaintiff wanted to skip the assessments and instead receive individualized tutoring to identify her gaps upfront.  This again asked the module director to go

20

through the entire course curriculum with her one-on-one and re-teach it to her. ISMMS is not designed to provide ongoing one-on-one instruction catered to an individual student's particular learning style.

ISMMS needs to have confidence that Plaintiff could demonstrate sufficient mastery of Hematology and Cardiology to be permitted to engage in patient care, which occurs in the next Phase of medical school, and only the School can make a determination as to how such mastery should be measured. Courts must defer to academic judgments where an institution evaluates an accommodation request and reasonably concludes that it would fundamentally alter the academic program. See Powell, 364 F.3d at 88; see also Dean, 804 F.3d at 190 (collecting cases).

Similarly, Plaintiff's allegation that she sought deadline adjustments for a Cardiology re-remediation fares no better. (See Amended Compl. ¶ 49.) Even assuming the truth of Plaintiff's allegations for purposes of this motion, what she seeks—permission to advance into Phase 2 remediation without satisfying the required Phase 1 remediation criteria—would constitute a fundamental alteration of the academic program, not a reasonable accommodation. (See Friedfel Decl., Ex. A.)

Second Circuit courts have long recognized that educational institutions are not required to "lower or effect substantial modifications of standards" to accommodate a student. See, e.g., Falchenberg v. N.Y. State Dep't of Educ., 642 F. Supp.2d 156, 161 (S.D.N.Y. 2008) (holding that proposed exam modifications would "fundamentally alter the measurement of the skills the examination is intended to test" and therefore were not reasonable accommodations); Maczaczyj v. N.Y., 956 F. Supp. 403 (W.D.N.Y. 1997) (university not required to permit attendance by telephone where the request would substantially modify the academic program). The law requires access to existing programs; it does not require institutions to redesign curricula, modify

21

assessment standards, or confer academic advantages unavailable to other students.  See Doe v. Pfrommer, 148 F.3d 73, 83 (2d Cir. 1998).

Because the modification sought would fundamentally alter the nature of the M.D. program and impose an undue hardship, Plaintiff's failure-to-accommodate claim must be dismissed as a matter of law.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER A DISPARATE TREATMENT THEORY.

Plaintiff's disparate treatment claim likewise fails because she does not plausibly allege that any adverse academic action was taken "by reason of" her disability.  To state a claim under a disparate treatment theory, a plaintiff must allege intentional discrimination; absent direct evidence of discriminatory animus, a plaintiff must plead facts supporting an inference of discrimination by identifying similarly situated individuals who were treated more favorably in all material respects.  Freckleton v. Mercy Coll. N.Y., No. 22-CV-1985, 2023 U.S. Dist. LEXIS 52148, at *16 (S.D.N.Y. Mar. 27, 2023);  Kosack v. Entergy Enters. Inc., No. 14-CV-9605, 2019 U.S. Dist. LEXIS 12483, at *6 (S.D.N.Y. Jan. 25, 2019).

### A.    Plaintiff Was Not Denied Access to the M.D. Program Because of Disability.

Plaintiff fails to allege that ISMMS denied her access to its M.D. program or otherwise discriminated against[2] her because of disability.  To the contrary, the Amended Complaint itself reflects that ISMMS consistently applied its academic and remediation policies to Plaintiff and

---

[2] Plaintiff's allegation that Academic Probation was imposed "before all remediation outcomes were known" and while her ADA concerns were being discussed (Amended Compl., ¶ 33) does not support a claim of discrimination or failure to accommodate.  Academic Probation is a non-disciplinary monitoring status imposed where a student has unresolved academic deficiencies.  It is designed to facilitate oversight and support while deficiencies remain outstanding; it does not represent punishment, denial of access, or a determination of final academic outcome.  The imposition of Academic Probation does not require that all remediation attempts be completed or graded but, instead, turns on whether unresolved deficiencies exist as of the time of review.  (Friedfel Decl., Ex. A.)  Plaintiff concedes that she had failed and not yet remediated Renal, Hematology, and Cardiology at the time probation was imposed.  (Amended Compl. ¶ 33.)

supported her continued participation in the program despite repeated academic setbacks. Plaintiff failed multiple Phase 1 modules but was afforded all remediation opportunities available under School policy, received structured remediation plans and study guides, and had access to a learning specialist throughout the remediation process. The Amended Complaint further demonstrates that DS engaged with Plaintiff regarding her concerns and accommodation requests, and that Plaintiff ultimately passed Hematology remediation without receiving the modifications she now claims were required. Taken together, these allegations confirm that the challenged academic outcomes resulted from the application of neutral academic standards—not from disability-based exclusion or denial of access.

These allegations mirror those in Powell, where the Second Circuit rejected a medical student's disability-discrimination claim after finding that the school had "done nothing other than support Powell in her efforts to succeed in its medical program." See Powell, 364 F.3d at *87-88. The Court held that such extensive academic support defeated any inference of discriminatory exclusion. Id. The same is true here. Plaintiff's allegations show that ISMMS provided her with many accommodations for her disabilities, repeated opportunities to demonstrate competency, substantial academic resources, and flexibility in scheduling. Where an educational institution affords a student multiple chances to remediate deficiencies and supports continued participation notwithstanding repeated failures, a claim of disability discrimination cannot stand.

### B.    Plaintiff Fails to Identify Any Similarly Situated Students Treated More Favorably.

Plaintiff's claim also independently fails because her Amended Complaint still fails to identify any similarly situated students, disabled or non-disabled, who were treated more favorably; courts routinely dismiss claims on this basis as well. See Wright v. City of N.Y., 2024 U.S. Dist. LEXIS 154796, at *19 (S.D.N.Y. Aug. 27, 2024) (granting motion to dismiss on

23

disability discrimination claim because plaintiff failed to identify similarly situated individuals); Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 457 (S.D.N.Y. 2023) (dismissing plaintiff's disability claim because she failed to "link the [adverse actions] to her alleged disability . . . for instance, by identifying any instances of direct animus or differential treatment of similarly situated competitors"); Morren v. N.Y. Univ., 20-CV-10802, 2022 U.S. Dist. LEXIS 94266, at *17 (S.D.N.Y. Apr. 29, 2022).

Rather than alleging that ISMMS intentionally treated her worse than other students because of her disability, Plaintiff asserts that she should have been treated *differently*—through alterations to remediation structure, assessment design, or academic standards—to better suit her learning preferences. Not only is there no legal obligation to accommodate a student's learning style or preference, allegations of this nature would sound solely in a failure-to-accommodate theory, cannot support a claim of disparate treatment, and, in any event, fail for the reasons set forth above. See J.D. ex rel. J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 71 (2d Cir. 2000) ("§ 504 does not require a public school district to provide students with disabilities with potential-maximizing education, only reasonable accommodations that give those students the same access to the benefits of a public education as all other students"); Blevins v. Town of Brighton, No. 24-CV-6080-MAV, 2025 U.S. Dist. LEXIS 131300, at *13-15 (W.D.N.Y. July 10, 2025) (dismissing disparate treatment claim as plaintiff's concerns surrounded failure-to-accommodate).

In sum, Plaintiff's allegations amount to precisely the type of conclusory, *post hoc* reasoning courts have repeatedly rejected. A plaintiff's belief or perception that she was discriminated against is insufficient to support an inference of discriminatory motivation. Brodt v. City of N.Y., 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014); Daniels v. Kijakazi, No. 22-cv-6297, 2023 U.S. Dist. LEXIS 99683, at *15-16 (S.D.N.Y. June 8, 2023); Dooley v. Jetblue Airways

24

Corp., No. 14-CV-4432, 2017 U.S. Dist. LEXIS 138892, at *15 (S.D.N.Y. Aug. 28, 2017); see Cangro v. N.Y.C. Dept. of Fin., No. 23-CV-10097, 2024 U.S. Dist. LEXIS 195549, at *7-8 (S.D.N.Y. Oct. 25, 2024) (dismissing complaint with prejudice where "neither in his First Amended Complaint nor in his Proposed Second Amended Complaint does Plaintiff plead any facts that his accommodation requests were denied . . . 'or any facts supporting that' such 'was the product of disability-based discriminatory animus.'"); Dass v. City Univ. of N.Y., No. 18-CV-11325, 2020 U.S. Dist. LEXIS 70420, at *8 (S.D.N.Y. Apr. 21, 2020) (granting motion to dismiss because "Plaintiff's First Amended Complaint is devoid of any facts giving rise to an inference of discriminatory intent with respect to Plaintiff's disability").

Plaintiff fails to plausibly allege intentional discrimination, differential treatment, or discriminatory animus; her disparate treatment claim, therefore, should be dismissed.

### C.    Plaintiff's Rehabilitation Act Claim Must Be Dismissed Because She Cannot Allege That Any Action Was Taken Solely by Reason of Disability.

Plaintiff's § 504 claim fails for the independent and dispositive reason that she cannot establish that she was excluded from ISMMS's program "solely" by reason of her disability. See 29 U.S.C. § 794(a); Goe v. Zucker, 43 F.4th 19, 35 (2d Cir. 2022). The sole accommodation Plaintiff contends was improperly denied was her purported request to alter the structure and scope of remediation assessments—by narrowing the content tested, substituting alternative evaluation methods, or otherwise modifying the academic competencies she was required to demonstrate. ISMMS denied that request not because of Plaintiff's disability, but because the proposed modifications would have altered essential academic requirements and assessment standards applicable to all students—a legitimate, non-discriminatory reason. Moreover, the extensive accommodations provided to Plaintiff throughout her enrollment further undermine any inference that ISMMS acted solely on the basis of disability. Where such non-disability-related reasons

exist, a Rehabilitation Act claim necessarily fails. <u>See id.</u>;  <u>Askins v. Weinberg</u>, No. 19-CV-8793, 2022 U.S. Dist. LEXIS 177992, at \*18 (S.D.N.Y. Sep. 29, 2022) (dismissing § 504 claim where plaintiff failed to prove actions occurred solely due to disability).

Accordingly, Plaintiff's § 504 claim must be dismissed.

<u>**CONCLUSION**</u>

Based upon the foregoing, Defendant respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Amended Complaint in its entirety with prejudice and award such other and further relief as the Court deems just and proper.

Dated: White Plains, New York
　　　　June 22, 2026

Respectfully submitted,

JACKSON LEWIS P.C.
44 South Broadway, 14th Floor
White Plains, New York 10601
914-872-8060

By: _____

Susan D. Friedfel, Esq.
Sophia J. Dibbini, Esq.
*Attorneys for Defendant*

26

## CERTIFICATION

I, Sophia J. Dibbini, an attorney duly admitted to practice before this Court hereby certify that the foregoing memorandum of law was prepared on a word processing system and that the software indicates that the document contains 7,637 words, including footnotes, but excluding the cover page, tables and signature block.

*/s/ Sophia J. Dibbini*